UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED

2011 APR 27 P 2: 17

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

RICHARD LEE PAIVA

C.A. NO. 10-179 S

TEJ BANSAL, ET AL.

## REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Presently before the Court are two motions filed by Richard Lee Paiva ("Plaintiff"), *pro se*, an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island: (i) a motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction (the "PI Motion") pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Rule 65") (Docket # 17) and (ii) a motion for Declaratory Judgment (the "Declaratory Judgment Motion") pursuant to Rule 57 of the Federal Rules of Civil Procedure ("Rule 57") (Docket # 42). Plaintiff seeks a Court order requiring the defendant ACI doctors ("Defendants") to provide him with requested medical care as well as a ruling that Defendants are liable for negligence and denial of adequate medical care. Defendants have objected to Plaintiff's motions (Dockets ## 18 & 50). The PI Motion and Declaratory Judgment Motion have been referred to me for preliminary review and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). I have determined that a hearing is not necessary. *Campbell Soup Co., v. Giles*, 47 F.3d 467, 469 (1st Cir. 1995). For the reasons stated below, Plaintiff's PI Motion and Declaratory Judgment Motion are DENIED.

## BACKGROUND

Plaintiff was committed to the ACI on March 30, 2009. Prior to such date, in November 2006, Plaintiff suffered a back injury, which was diagnosed as a herniated disc, sciatica, and degenerative lumbar disc disease. Amended Complaint ("Am. Cmpt.") (Docket # 71), ¶ 9; Supplemental Exhibits ("Supp. Exhs.") (Docket # 53), Exh. H. at pp. 45 & 53, Exh. I at p. 58. He sought treatment from various doctors. Am. Cmpt., ¶ 10; Supp. Exhs. Plaintiff underwent three back surgeries at Rhode Island Hospital, in May 2007, July 2007, and April 2008, respectively. *Id.* Prior to his incarceration, Plaintiff discussed future treatment options with his doctors, including an x-ray, a CT scan, and, possibly another surgery; however, Plaintiff was informed by at least one doctor that additional surgery might exacerbate, rather than alleviate, his pain. PI Motion, Declaration of Plaintiff, ¶ 8; Am. Cmpt., ¶¶ 12-13; Supp. Exhs., Exh. I at p. 74.

Regardless, Plaintiff was committed to the ACI before such additional treatment occurred. PI Motion, Declaration of Plaintiff, ¶ 8; Am. Cmpt., ¶ 14.

Also, from November 2006 until his incarceration in March 2009, Plaintiff received ongoing pain management treatment consisting of pain medication (MS Contin, Vicodin, and/or Valium) and two epidural cortisone injections. Am. Cmpt. ¶ 10; Supp. Exhs. Plaintiff's medical records indicate that Plaintiff and his primary care physician, Dr. Allison Fox, intended to taper the narcotic medications Plaintiff was taking and explore other means of managing his pain. Supp. Exhs., Exh. I at pp. 72, 80, 84, 87 & 89-90. In fact, his medical records indicate that in July 2008 Plaintiff signed a pain contract discussing tapering his medications while at almost every appointment Plaintiff had with Dr. Fox thereafter, the doctor noted that the plan was to taper, or continue tapering, Plaintiff's medications. *Id.* However, at the time of his incarceration, although Plaintiff's medication had been reduced, Plaintiff continued to receive prescriptions for MS Contin, Vicodin, and Valium. *Id.*, Exh. I at p. 72.

Additionally, Plaintiff attended physical therapy sessions prior to his incarceration. *Id.*, Exh. H at p. 24, Exh. I at pp. 94-106. However, Plaintiff's medical records indicate that he was discharged from a physical therapy program at Memorial Hospital of Rhode Island on October 29, 2008 due to his failure to attend a number of appointments. *Id.*, Exh. I at p. 106.

Plaintiff alleges that the day after he was committed to the ACI as a pretrial detainee, he informed the attending physician at the ACI Intake Service Center (the "ISC") about his back injury, chronic severe pain, and the treatment and medication he had received. Am. Cmpt. ¶ 15. The doctor ordered an x-ray, which showed that the surgical hardware in Plaintiff's lower spine was properly aligned. *Id.* After an exam in which he did not physically touch Plaintiff, the doctor prescribed ibuprofen to treat Plaintiff's pain (in place of the pain medication prescribed for Plaintiff for almost two year prior to his incarceration). *Id.* at ¶ 16. Over the next nineteen months, Plaintiff submitted approximately fourteen requests to be seen by a doctor for his pain. *Id.* at ¶ 17. ISC primary care physician, defendant Dr. Tej Bansal, examined Plaintiff (again without physically touching him) approximately five times; the doctor continued the prescription for ibuprofen and ordered Plaintiff to meet with a physical therapist. *Id.* (I note that Plaintiff alleges that he was only allowed a one-time evaluation with a physical therapist, who showed him stretching exercises, while, in the medical records Plaintiff attached as Exhibit G to his initial Complaint ("Cmpt.") (Docket # 1), Dr. Bansal comments that Plaintiff refused physical therapy. Cmpt., Exh. G at p. 52.) Despite Plaintiff informing Dr. Bansal and other medical staff,

including defendant medical directors Drs. José Arias and Michael Fine, on multiple occasions that he was in constant pain, the medical staff refused to prescribe stronger pain medication, order tests, examine Plaintiff by physically touching him, or refer him to a specialist. Am. Cmpt. at ¶¶ 18-40 & Exhs. A-C.

Plaintiff was sentenced and transferred to maximum security at some point prior to November 30, 2010, when he informed the Court of his new address in maximum security. (Docket # 34). Plaintiff has not provided any information regarding his medical treatment at maximum security; however, in the Amended Complaint he filed on March 7, 2011, he continues to seek an injunction ordering that Defendants provide him with adequate medical care, including chronic pain management and an evaluation by a neurosurgeon. Am. Cmpt. ¶ 47.

## DISCUSSION

### I.  PI Motion

As noted above, pursuant to the instant PI Motion, Plaintiff seeks an immediate Court order requiring Defendants to provide appropriate medical care, including arranging for an examination of Plaintiff by a neurological specialist and following the specialist's recommended course of treatment regarding pain medication, physical therapy and surgery.  Defendants urge that Plaintiff has not offered any evidentiary support to indicate that they are providing him with inappropriate medical care.

#### A.    Legal Standards

Under Rule 65, a preliminary injunction is a mechanism used to preserve the status quo and prevent irreparable harm pending litigation of the merits while a TRO may be granted to prevent irreparable harm that is likely to occur before a preliminary injunction hearing can be held. *See CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc.,* 48 F.3d 618, 620 (1st Cir. 1995); *Fairchild Semiconductor Corp. v. Third Dimension (3D), Inc.,* 564 F.Supp.2d 63, 66 (D.Me. 2008).  Here, as Defendants have been given notice and the opportunity to respond to Plaintiff's motion, the motion will be construed as a motion for preliminary injunction. *See Stanton ex rel. Stanton v. Brunswick Sch. Dep't,* 577 F.Supp. 1560, 1566 (D.Me. 1984).

To obtain a preliminary injunction, Plaintiff, as the moving party, has the burden of persuasion to show: (i) a substantial likelihood of success on the merits; (ii) a significant risk of irreparable harm if the injunction is denied; (iii) the harm he will suffer absent the injunction outweighs any harm to defendants if the injunction is granted; and (iv) the injunction "will promote (or, at least, not denigrate) the public interest." *McGuire v. Reilly,* 260 F.3d 36, 42 (1st

Cir. 2001). Of the four factors, the likelihood of success on the merits is of primary importance. *See Wine and Spirits Retailers, Inc. v. R.I.*, 418 F.3d 36, 46 (1st Cir. 2005).

A preliminary injunction is an "extraordinary and drastic remedy" and should only be granted if the movant carries the burden of persuasion by a clear showing. *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865 (1997). Further, a number of factors require even closer scrutiny here, where Plaintiff, a prisoner, seeks an order requiring ACI Defendants to provide him temporary injunctive relief (*ie.* medical treatment) equivalent to the injunctive relief he ultimately seeks in this action. First, courts generally disfavor preliminary injunctions of a mandatory nature, particularly ones that (i) alter, rather than preserve, the status quo or (ii) grant the ultimate relief sought by the moving party. *See Escobar v. Reid*, 348 Fed.Appx. 387, 389 (10th Cir. 2009); *Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 995 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526, 104 S.Ct. 2557 (1984); *S.W. Indus., Inc. v. Aetna Cas. & Sur. Co.*, 646 F.Supp. 819, 823 (D.R.I. 1986). Second, given the well-established law that prison management functions generally should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively, *see, e.g., Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162 (2003), Courts grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances, *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). As discussed below, Plaintiff has not met this strict burden of persuasion.

**B.    Application of Standard to Plaintiff's Claims**

**1.    Likelihood of Success on the Merits**

Here, Plaintiff seeks an injunction based on his claim, pursuant to 42 U.S.C. § 1983 ("§ 1983"), that Defendants are violating his constitutional rights by failing to provide him with adequate medical care. To succeed in a § 1983 action, a plaintiff must prove that the conduct of which he complains (i) was committed by a person acting under color of state law and (ii) deprived him of a constitutional or federal statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). As it appears that Defendants' actions were under color of state law, the question in this case is whether Defendants deprived Plaintiff of a constitutional right.

**a.    Preliminary Issue:  Standard Applicable to Pretrial Detainee**

Plaintiff was a pretrial detainee when he filed both the initial complaint and the instant action; however, since that time, he has been convicted and sentenced. Nonetheless, although "pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather

than the Eighth Amendment ..., the standard to be applied is the same as that used in Eighth Amendment cases." *Burrell v. Hampshire County*, 307 F.3d 1, 7 (1st Cir. 2002)(citing *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861 (1979)(the Due Process Clause protections are at least as great as those under the Eighth Amendment)). Accordingly, Plaintiff's claims will be analyzed under the Eighth Amendment standard.

### b. Eighth Amendment Inadequate Medical Care Analysis

The Eighth Amendment prohibits prison officials from deliberate indifference to an inmate's serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). Determining if a prison official acted in violation of such prohibition requires an inquiry into both objective and subjective factors. First, the prisoner's medical need must be objectively serious, involving a substantial risk of serious harm if not properly treated. *See Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990)("A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"). Second, the prison official must have had subjective awareness of the inmate's need and consciously disregarded a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837. This standard has "been likened to the standard for determining criminal recklessness." *Burrell*, 307 F.3d at 8 (citation omitted).

Here, although Plaintiff's medical records may indicate a serious medical need, he has not shown a substantial likelihood of succeeding on his claim that Defendants' have been deliberately indifferent to such need. Plaintiff, relying on the Supreme Court's statement in *Estelle* that deliberate indifference might be manifested by a prison guard "intentionally interfering with the treatment once prescribed," 429 U.S. at 104-05, urges that deliberate indifference on the part of Defendants can be inferred from their denial of treatment prescribed to him prior to his incarceration. However, Defendants here are medical professionals exercising medical judgment in treating Plaintiff, rather than officers deliberating ignoring medical directives. *See id.* at 107 (In determining that the prison doctor did not act with deliberate indifference in prescribing bed rest, muscle relaxants, and pain relievers rather than pursuing additional tests for the prisoner-plaintiff's back pain, the Supreme Court noted, "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment"). Additionally, while it is clear that Plaintiff disagrees with the course of treatment he is receiving at the ACI and believes he should see a

neurological specialist, a prisoner has no constitutional right to choose his course of treatment or his doctor. *See Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). And, neither disagreements by a prisoner with his doctor nor even differences in viable medical opinions between doctors over the proper course of treatment rise to the level of a claim cognizable under the Eighth Amendment. *See Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1st Cir. 2007); *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006); *Robinson v. Hillsborough County Dep't. of Corr.*, No. 10-19, 2010 WL 3944643, at * 8 (D.N.H. Sept. 13, 2010)(prisoner's allegations that prison medical staff failed to provide adequate pain medication for his back injury did not rise to the level of a constitutional violation). Rather, to indicate deliberate indifference, the prisoner must show that the course of treatment the doctors knowingly chose was "so clearly inadequate as to amount to a refusal to provide essential care" or "shock the conscience.'" *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991)(internal citations omitted).

At the current stage of the proceedings in the instant case, Plaintiff points to no evidence indicating that the medical treatment provided to him by Defendants either amounted to a "refusal to provide essential care" or "shocked the conscience". Although Plaintiff's medical records indicate that, prior to his incarceration, numerous doctors, including neurosurgeons and pain clinicians, determined that he required surgery and narcotics to treat his back pain, those same records also reveal that the optimal treatment of his condition was far from clear. For instance, (i) Dr. Fox, who was prescribing narcotics to Plaintiff at the time of his incarceration, indicated a goal of tapering such medication and (ii) although a fourth surgery was being discussed, Dr. Fox noted that such surgery might exacerbate Plaintiff's pain. Supp. Exhs., Exh. I at pp. 72, 74, 80, 84, 87 & 89-90. Further, Plaintiff's medical records indicate that, although his doctors (both prior to incarceration and at the ACI) thought physical therapy might alleviate some of his pain, he failed to comply fully with his physical therapy regimen. Supp. Exhs., Exh. I, p. 106; Cmpt., Exh. G at p. 52. Additionally, Plaintiff attached letters to his Amended Complaint from defendant medical director Dr. Fine indicating that chronic back pain is a difficult condition to treat. Am. Cmpt., Exh. C. at p. 1. Thus, although Defendants' chose a different course of treatment than Plaintiff had been provided prior to incarceration, at this point Plaintiff has not shown that the treatment was constitutionally inadequate or even improper or that Defendants acted, or are continuing to act, with deliberate indifference to his medical needs.

Accordingly, Plaintiff has not met his burden of showing a substantial likelihood of success on the merits of his claim.

## 2. Other Factors

As Plaintiff has not shown a substantial likelihood that he will prove that Defendants are violating his Eighth Amendment rights by their choice of treatment for his back injury, the remaining three preliminary injunction factors need not be addressed, see *Wine and Spirits Retailers, Inc.*, 418 F.3d at 46, and I recommend that Plaintiff's PI Motion be DENIED.

## II. Declaratory Judgment Motion

Plaintiff's Declaratory Judgment Motion pursuant to Rule 57 is also misplaced. The purpose of a declaratory judgment ruling under Rule 57 is to "clarify legal rights and obligations" between potential or actual litigants. *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 534 & n.8 (1st Cir. 1995); *see also Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C. V.*, 28 F.3d 572, 578 (7th Cir. 1994). According to the advisory committee notes to Rule 57, "A declaratory judgment is appropriate when it will 'terminate the controversy' giving rise on undisputed or relatively undisputed facts ... ." Fed.R.Civ.P. 57, Advis. Comm. Notes.

Here, where Plaintiff alleges that Defendants are violating his constitutional rights by acting with deliberate indifference to his serious medical needs, the legal relationship between the parties has been clearly defined under the Eighth Amendment, and, thus, clarification of uncertain legal rights is not at issue. *See Nail v. Gutierrez*, No. 06-292, 2007 WL 1423748, at *1 (N.D.Ind. May 10, 2007)(denying prisoner's motion for declaratory judgment regarding his unreasonable search and seizure claim "because the Fourth Amendment has defined the legal relations between the parties with regards to unreasonable search and seizure cases"). Instead, as discussed above, there is a factual dispute in this case as to whether Defendants' actions constituted deliberate indifference, and Plaintiff has not shown that he will likely prove the same. Accordingly, I recommend that Plaintiff's Declaratory Judgment Motion be DENIED.

## CONCLUSION

As set forth above, although Plaintiff disagrees with the medical care he is receiving, as he has failed to demonstrate either (i) a substantial likelihood that he will succeed on the merits of his claims or (ii) a need for clarification of the parties' legal rights and obligations under the Eighth Amendment, I recommend that Plaintiff's Preliminary Injunction Motion and Declaratory Judgment Motion be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).

_____

Jacob Hagopian
Senior United States Magistrate Judge
April 26, 2011