UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICHARD LEE PAIVA,
    Plaintiff,

v.                                C.A. No: 10-179-M

TEJ BANSAL, et al.,
    Defendants.

## MEMORANDUM AND ORDER

In his *pro se* complaint, Plaintiff Richard Lee Paiva seeks declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983 based on his medical treatment during his confinement at the Rhode Island Adult Correctional Institution ("ACI"). Mr. Paiva claims that Defendants Tej Bansal, M.D., Jose Arias, M.D. and Michael Fine, M.D., doctors at the ACI, violated his constitutional right to adequate medical care and treatment under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, violated his due process rights, committed medical malpractice, and committed violations of the Americans with Disabilities Act ("ADA"). Before the Court is a Motion for Summary Judgment filed by all Defendants on all claims. (ECF No. 94.) For the reasons set forth below, Defendants' motion is GRANTED.

I.    **FACTS AND BACKGROUND**[1]

In November 2006 prior to being incarcerated, Mr. Paiva injured his back and was diagnosed with a herniated disk and degenerative disk disease, resulting in sciatica. SAC at ¶ 12. He had three back surgeries at Rhode Island Hospital which, according to Mr. Paiva, did not

---

[1] The facts are taken from Mr. Paiva's verified Second Amended Complaint ("SAC"). (ECF No. 87.)

resolve the chronic sciatic pain he experienced prior to the surgeries. *Id.* at ¶¶ 13, 14. As a result, he was prescribed narcotic pain relievers and was scheduled to undergo additional diagnostic tests to determine the cause of his continued pain. *Id.* at ¶¶ 14, 15. This testing protocol did not happen because, on March 30, 2009, Mr. Paiva was incarcerated. *Id.* at ¶ 17.

Upon his incarceration, Mr. Paiva was examined and informed the medical staff of his history of back issues and current prescriptions. *Id.* He was seen by Dr. Simon Melnick in the Intake Service Center the very next day, who replaced the prescription pain medication with Motrin and Elavil[2] and ordered an x-ray to try to determine the cause of Mr. Paiva's pain. *Id.* at ¶¶ 18-20. Dr. Melnick reviewed the x-ray films, which did not change his opinion of the appropriate treatment for Mr. Paiva. *Id.* at ¶ 20.

From approximately March 30, 2009 until August 7, 2009, Mr. Paiva was seen at least seven times by Dr. Bansal and other prison medical staff. Upon each visit, Dr. Bansal refused to change her opinion that non-narcotic pain medication was the appropriate treatment. *Id.* at ¶¶ 17-39. Mr. Paiva informed Dr. Bansal on a number of occasions that he was in chronic pain and the treatment was ineffective. *Id.* While Mr. Paiva alleges that he "strongly disagrees" with the medical care he received from March 31, 2009 until August 7, 2009, his inadequate medical care claims are based on what he alleges was a complete lack of care from August 2009 to December 2010. *Id.* at ¶ 55. During that time period when Dr. Bansal continued to refuse to modify his treatment, Mr. Paiva began writing letters to Drs. Arias, Fine and other prison officials to inform them that his medical treatment was inadequate. *Id.* at ¶¶ 40, 41, 46, 48, 49, 51, 53, 54. With the exception of a few occasions, medical staff responded to these letters though not to Mr. Paiva's satisfaction. *Id.* at ¶¶ 43, 45, 47, 50, 52, 54. Dr. Bansal did see Mr. Paiva on October 6, 2009 and Dr. Melnick examined him on an unspecified date shortly after August 18,

---

[2] Motrin is a pain reliever (ibuprofen) and Elavil is an anti-depressant.

2

2010. *Id.* at ¶¶ 39, 52. Both physicians determined that Mr. Paiva's current treatment was appropriate and did not prescribe stronger pain medications. *Id.*

## II. STANDARD OF REVIEW

Summary judgment may be granted only when a court finds "that there is no genuine dispute as to any material fact" and that the undisputed facts give rise to an entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011). A court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Id.* Because Mr. Paiva represents himself in this case, the Court will view his pleadings liberally. The Court is "solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, [the Court] hold[s] pro se pleadings to less demanding standards than those drafted by lawyers and endeavor[s], within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158-59 (1st Cir. 2008) (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000)).

"To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993) (internal quotation marks omitted). Further, "[o]n issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." *Flannery v. Bauermeister*, C.A. No. 06-399, 2008 WL 77723, at *2 (D.R.I. Jan. 4, 2008) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256-57 (1986). This evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of

the truth which a fact finder must resolve at an ensuing trial." *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

## III.  LEGAL ARGUMENT

Mr. Paiva has filed his claims under 42 U.S.C. § 1983, which requires "three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). He essentially brings two types of claims against Defendants. He asserts a medical negligence claim against Dr. Bansal for her allegedly inadequate treatment from August 2009 to December 2010. As against Dr. Bansal and the other two named Defendants, Drs. Arias and Fine who did not actually treat him, Mr. Paiva asserts claims for violations of his right not to be punished as a pre-trial detainee, due process violations, and violations of the ADA, the First, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. Defendants not only dispute Mr. Paiva's factual allegations, but also argue that his claims must fail because he has not named a medical expert in support his allegations.

### A.  Medical Negligence Claim

Defendants argue that Mr. Paiva's medical negligence claim fails because he has failed to identify an expert witness to support his claims that Dr. Bansal's treatment of his medical condition did not meet the generally accepted standard of medical care.[3] Mr. Paiva does not address this deficiency in his opposition to Defendants' motion.[4]

---

[3] The Court applies Rhode Island law to Mr. Paiva's medical negligence claim because its jurisdiction over the state law claim is based upon supplemental jurisdiction. *Doty v. Sewall*, 908 F.2d 1053, 1063 (1st Cir. 1990) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 722 (1966)).

[4] This expert issue has arisen in earlier proceedings in his case. In December of 2010, Mr. Paiva asked the Court to compel the ACI to take him to an outside doctor for an examination, pursuant to Rule 35 of the Federal Rules of Evidence, and to appoint an expert for him, citing Rule 706 of the Federal Rules of Evidence. (ECF No. 36.) The Court declined to do so under either rule. It

4

"[T]he overwhelming weight of authority is to the effect that, except in rare instances, expert evidence is ordinarily necessary to support an action for negligence against a physician or surgeon where the exercise of proper skill or care is in issue." *Nolan v. Kechijian*, 64 A.2d 866, 868 (R.I. 1949). "[I]n order to establish the standard of care in a negligence claim, expert testimony is mandated unless clearly obvious to a lay person." *Rhode Island Insurer's Insolvency Fund v. Leviton Mfg. Co.*, 763 A.2d 590, 595 (R.I. 2000) (citing *Sheeley v. Mem'l Hosp.*, 710 A.2d 161, 164 (R.I. 1998); *see also Dunning v. Kerzner*, 910 F.2d 1009, 1014 (1st Cir. 1990). The expert should testify about the appropriate standard of care and "must measure the care that was administered against the degree of care and skill ordinarily employed in like cases . . . ." *Richardson v. Fuchs*, 523 A.2d 445, 448 (R.I. 1987) (citations omitted). Expert testimony is essential to explain "*what proper procedures and alternatives are available* to a physician . . . [and] why the procedures followed by the defendant physician were negligent, *and not legitimate*, alternatives." *Sousa v. Chaset*, 519 A.2d 1132, 1135 (R.I. 1987).

In this case, Mr. Paiva has failed to identify an expert or experts to testify on his behalf.[5] Further, he has failed to submit any evidence to establish the appropriate standard of care is in the context of his case, any evidence that Dr. Bansal or any of the other medical staff deviated from that standard of care, or that that deviation caused his injuries. *Schenck v. Roger Williams Gen. Hosp.*, 382 A.2d 514, 516-17 (R.I. 1977); *Boccasile v. Cajun Music Ltd.*, 694 A.2d 686, 690 (R.I. 1997). Moreover, the nature of Mr. Paiva's injuries as well as the type and dosage of any pain medication he argues that he required is well beyond the knowledge of a lay person and

---

found that Rule 35 did not apply to the situation at hand and that it should not be used "to obtain an expert medical witness at the Court's expense." *Paiva v. Bansal*, C.A. No. 10-179, 2011 WL 1595425, at *2 (D.R.I. Apr. 27, 2011), (ECF No. 80.) As for Rule 706, a court's decision to appoint an expert at court expense requires "extraordinary and compelling circumstances" and, in Mr. Paiva's case, the court did not find those compelling circumstances. *Id.* at 2-3.

[5] In fact, Mr. Paiva named his doctors as experts in accordance with the Court's scheduling order, but subsequently withdrew them. (ECF Nos. 57, 64.)

requires testimony from a qualified medical expert. Mr. Paiva does not point to any evidence in the record that there was a lack of care so obvious that a lay person could find Defendants were medically negligent without the assistance of an expert. Because his negligence claim is missing this vital expert evidence, and because Defendants have put forth an expert witness who opines that Mr. Paiva's care was within the appropriate standard, Mr. Paiva cannot prevail on his claims of inadequate medical care as a matter of law. His medical negligence claim, therefore, must be dismissed and Defendants' motion in this regard is granted.

### B. Plaintiff's Constitutional Claims

Mr. Paiva summarizes his allegations by asserting that the litany of facts detailed in the SAC constitute violations the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. SAC at ¶ 61. He also alleges a "due process violation," presumably under the Fifth and/or Fourteenth Amendments. *Id.* He does not specify the factual basis for each constitutional claim and Defendants do not address these claims, but the Court will endeavor to address each of them.

Mr. Paiva pleads that Defendants "violated his right to adequate medical care and treatment for a serious medical need; under the 1st, 5th, 6th, 8th, and 14th Amendments to the United States Constitution." SAC at ¶ 61. Other than including the First and Sixth Amendments in the list, Mr. Paiva does not specifically assert any allegations that could support a claim under either of these amendments. Therefore, the Court finds that Mr. Paiva's claims under the First and Sixth Amendments, to the extent they may be based on allegations other than inadequate medical treatment and care for a serious medical need, must fail. Mr. Paiva's Fifth Amendment claim suffers a similar fate. The Court notes that the due process clause applies only to unconstitutional actions taken by the federal government, not to the state government or private actors. *Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952); *see also Gerena v. Puerto Rico*

*Legal Sers., Inc.*, 697 F.2d 447, 448 (1st Cir. 1983). Because Mr. Paiva has not alleged that the federal government or its agents were involved in providing his medical care while at the ACI, his Fifth Amendment claims necessarily fail.[6]

Mr. Paiva's Eighth and Fourteenth Amendment claims remain; the Court will deal with each *seriatim*. He argues that the lack of medical care he received at the ACI amounted to cruel and unusual punishment and deliberate indifference to his health needs in violation of the Eighth Amendment.

> Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).

While the court does not doubt that Mr. Paiva experienced pain during his time at the Intake Service Center, the record does not support his allegations of deliberate indifference. With respect to Eighth Amendment claims made by prisoners, although based on a fundamental notion of fairness and due process that appropriate medical care must be provided to prisoners, courts generally will not engage in second guessing the adequacy of medical care provided in every case. *See Vinzant v. Layne*, 657 F.2d 468, 474 (1st Cir. 1980). As previously noted, Dr. Bansal examined Mr. Paiva twice and Drs. Fine and Arias responded to his correspondence in the time period that he alleges he received no medical care or attention. While Defendants did not provide the exact medical care and treatment he requested, there is no

---

[6] Due to his general invocation of "due process" violations in his SAC, the Court will address those violations in the context of its discussion of the Fourteenth Amendment.

7

question that their conduct did not offend evolving standards of indecency. Mr. Paiva has not alleged that Defendants possessed the culpable state of mind necessary for him to state an Eighth Amendment claim. Therefore, Defendants' summary judgment motion on this claim is granted.

Mr. Paiva also alleges that Defendants have violated his right not to be punished as a pretrial detainee, presumably under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment protects individuals, "against deprivation of life, liberty, or property." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In the correctional environment,

> [t]he government may detain one accused of a crime prior to trial in order to ensure his presence at trial. Prior to an adjudication of guilt, however, a state government may not punish a pretrial detainee without contravening the Fourteenth Amendment's Due Process Clause. The government may, however, impose administrative restrictions and conditions upon a pretrial detainee that effectuate his detention, and that maintain security and order in the detention facility.

*O'Connor v. Huard*, 117 F.3d 12, 16 (1st Cir. 1997) (internal citations omitted); *see Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155 (1st Cir. 2007) (the Fourteenth Amendment prohibits deliberate indifference with respect to pretrial detainees). Because he is a prisoner, Mr. Paiva must show that the Defendants' actions imposed an "atypical and significant hardship on [him] in relationship to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Mr. Paiva fails to allege, however, that Defendants' failure to provide adequate medical care constituted punishment in violation of his due process rights. In fact, Mr. Paiva's allegations do not dispute that Defendants provided some medical care during the relevant time period and do not demonstrate that Defendants' actions or omissions were punitive in any way. Moreover, in the SAC, Mr. Paiva sets forth in detail the number of occasions that he was seen by prison medical staff and the substance of the frequent correspondence with Drs. Arias and Fine

about his medical condition. The Court finds that Mr. Paiva's pretrial detainee and due process claims under the Fourteenth Amendment fails.

### C. Americans With Disabilities Act Claim

Mr. Paiva claims that Defendants violated his rights under the ADA. To state a claim for a violation of Title II the ADA, a statute enacted to eliminate discrimination against individuals with disabilities, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000).

As an initial matter, Mr. Paiva has not presented any evidence that he is "disabled" and therefore protected under the ADA. Even if he had satisfied this element, Mr. Paiva fails to make any factual allegations to raise a genuine issue of material fact that he was discriminated against based upon his medical condition. In fact, Mr. Paiva does not allege that he was discriminated against at all in his SAC, but rather he alleges that he received inadequate medical care from allegedly negligent physicians. The ADA, however, does not create a remedy for medical malpractice. *See, e.g., Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006); *Lesley v. Hee Man Chie*, 250 F.3d 47, 54-55 (1st Cir. 2001) (holding that the ADA does not create a remedy for medical malpractice). Because there are no allegations anywhere in the SAC that Defendants' failure to provide adequate medical care was because of Mr. Paiva's alleged disability, his ADA claim fails. Accordingly, Defendants' motion for summary judgment on this claim is granted.

### IV. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

*/s/ John J. McConnell, Jr.*
_____
John J. McConnell, Jr.
United States District Judge
Date: April 3, 2012